## JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

SUFNA RENEAU, an individual,

      Plaintiff,

    vs.

YOSHIDA & GARCIA, INC., a professional law corporation; LONG BEACH MEMORIAL MEDICAL CENTER, a business entity form unknown; and DOES 1 to 10, inclusive,

      Defendants.

Case No. 2:23-cv-05762-SPG-SSC

**ORDER GRANTING IN PART MOTION TO DISMISS AND REMANDING THE ACTION [ECF NO. 10]**

      Before the Court is Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (ECF No. 22). Plaintiff opposes. (ECF No. 26). Having considered the parties' submissions, the relevant law, and the record in this case, the Court finds this matters suitable for resolution without a hearing. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, the Court **GRANTS** Defendants' Motion as to the first cause of action and **REMANDS** the remaining state law causes of action.

-1-

# I.      BACKGROUND

## A.      Factual Background

The following facts are taken from Plaintiff's Third Amended Complaint ("TAC"):

On June 3, 2020, Plaintiff was involved in an automobile accident with Andres Hernandez, who was insured by Alliance United.  (ECF No. 20 ("TAC") ¶ 24, 30). Following the accident, Plaintiff sought and was given medical care from Defendant Long Beach Memorial Medical Center ("Memorial").  (*Id.* ¶¶ 26–27).  Plaintiff represented and Memorial confirmed that Plaintiff was Medi-Cal eligible and that Memorial "would bill Medi-Cal for the services rendered." (*Id.* ¶ 26).   Memorial subsequently billed the Department of Healthcare Services ("DHCS") for a portion of the treatment costs, and DHCS paid Memorial for the submitted portion of the treatment based on DHSC's payment schedule for the covered services.  (*Id.* ¶¶ 28–29).  However, $7,683.00 of the treatment costs were not billed to DHCS and currently remain unpaid.  (*Id.* ¶¶ 28, 30).

On or around July 24, 2020, Defendant Yoshida & Garcia ("Y&G"), a law firm that engages in the practice of third-party debt collection, mailed a letter to Mr. Hernandez's insurer, Alliance United, on behalf of MemorialCare asserting a right to enforce a hospital lien on the non-submitted and unpaid amount of $7,683.00 pursuant to California Civil Code § 3045.5 (the "Lien Letter").  (*Id.* ¶¶ 18–19, 30).  Plaintiff alleges that Defendant Y&G also attached a Notice of Hospital Lien and threatened to enforce the lien by filing an action against each person, firm or corporation alleged to be liable to Plaintiff, namely, Alliance United and Mr. Hernandez (the "Hospital Lien").  (*Id.* ¶ 31).  Plaintiff, Hernandez, and Alliance United entered into a settlement agreement on or about March 5, 2021, whereby Plaintiff agreed to release Hernandez and, in exchange, Alliance United agreed to pay Plaintiff $7,500.  (*Id.* ¶ 34).  However, Defendant Y&G continued to attempt to collect the Hospital Lien on behalf of Memorial.  (*Id.* ¶ 35).

## B.      Procedural History

Plaintiff commenced this case in the Superior Court of the State of California for the County of Los Angeles on June 9, 2021.  (ECF No. 1-3).  From June 9, 2021, through early

1   July 2023, this case was litigated in Los Angeles County Superior Court on purely state
2   law claims.  *See* (ECF No. 1, ECF Nos. 1-1 through ECF No. 1-71); *see also* ECF No. 1-
3   39 (first amended complaint, filed on October 18, 2022, asserting only state law claims)).

4        On June 16, 2023, Plaintiff filed her Second Amended Complaint, asserting for the
5   first time, a federal cause of action. (ECF No. 1-66). On July 17, 2023, Defendant properly
6   removed the case to this Court based on federal question jurisdiction. (ECF No. 1).  On
7   August 7, 2023, Defendants moved to dismiss the Second Amended Complaint, which the
8   Court granted on November 27, 2023.[1]  (ECF No. 19 ("MTD Order")).

9        On December 11, 2023, Plaintiff filed the TAC asserting three causes of action:
10  violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq.
11  against Defendant Y&G only; violation of the Rosenthal Act ("Rosenthal Act"), Cal. Civ.
12  Code §§ 1788, et seq. against all Defendants; and violation of California's Unfair
13  Competition Law ("UCL"), Cal. Bus. & Prof. §§ 17200, et seq. against all Defendants. *See*
14  *generally* (TAC).  Plaintiff brings these claims on behalf of herself and a class of similarly
15  situated individuals.  *See* (*id.*).  On January 16, 2024, Defendants filed the instant Motion
16  pursuant to Rule 12(b)(6).  (ECF No. 22-1) ("Mot.")).  Plaintiff opposes.  (ECF No. 26
17  ("Opp.")).

18  **II.    LEGAL STANDARD**

19       Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include
20  "a short and plain statement of the claim showing that the pleader is entitled to relief."  A
21  complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of
22  Civil Procedure 12(b)(6).  When resolving a motion to dismiss for failure to state a claim
23  under Rule 12(b)(6), courts "must consider the complaint in its entirety, as well as other
24  sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in
25  particular, documents incorporated into the complaint by reference, and matters of which
26  a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.

27

---

28  [1] Defendants also moved to strike the Second Amended Complaint pursuant to Cal. Code
    Civ. Proc. § 425.16.  The Court denied that motion. *See* (MTD Order).

1  308, 322 (2007).  "Dismissal under Rule 12(b)(6) is proper when the complaint either

2  (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a

3  cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  To

4  survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to

5  relief that is plausible on its face."  *Twombly*, 550 U.S. at 556.  "A claim has facial

6  plausibility when the plaintiff pleads factual content that allows the court to draw the

7  reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556

8  U.S. at 678.  "The plausibility standard is not akin to a probability requirement, but it asks

9  for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal

10  quotation marks omitted).

11          When ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in

12  the complaint as true and construe[s] the pleadings in the light most favorable to the

13  nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031

14  (9th Cir. 2008).  The Court is "not required to accept as true allegations that contradict

15  exhibits attached to the Complaint," allegations that contradict "matters properly subject

16  to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact,

17  or unreasonable inferences."  *Seven Arts Filmed Ent., Ltd. V. Content Media Corp. PLC*,

18  733 F.3d 1251, 1254 (9th Cir. 2013) (citing *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d

19  992, 998 (9th Cir. 2010)).

20  **III.   DISCUSSION[2]**

21          Defendants move for dismissal of Plaintiff's TAC on several grounds.  First,

22  characterizing Plaintiff's case challenging the legality of the Hospital Lien as a "cleverly

---

[2] The Court's previous order turned on an intricate determination of the California Hospital Lien Act ("HLA"), which allows a hospital that has treated an accident victim to recover service-related fees from the tortfeasor, and the HLA's interaction with California's version of Medicaid (Medi-Cal) for "needy persons."  The Court's previous order sets forth, at length, the statutory background involved, which the Court will not reiterate here.  *See* (MTD Order at 11–14).  Nor is it relevant as to the dispositive determination in this Order.

1   concealed claim[] for benefits" and thus "inextricably intertwined with the Medicare

2   [A]ct," Defendants argue that this Court lacks subject matter jurisdiction due to Plaintiff's

3   failure to exhaust her administrative remedies, as is required by the Medicare Act.  Second,

4   Defendants argue that Plaintiff has failed to state a claim against Y&G under the FDCPA

5   because Plaintiff has not alleged sufficient facts to demonstrate the essential elements of

6   her claim—namely, prohibited conduct, that Defendants are "debt collectors," and that the

7   Lien Letter is a "communication," as defined by the FDCPA.  Finally, if the Court grants

8   dismissal of Plaintiff's federal claim, Defendants request that the Court decline to exercise

9   supplemental jurisdiction over Plaintiff's state claims.  Alternatively, Defendants argue

10  that each of Plaintiff's state claims fail to state a cause of action.

11  For the reasons discussed below, the Court finds that Plaintiff has failed to allege

12  that Defendant Y&G is a debt collector under the FDCPA for her federal claim.  Further,

13  because leave to amend would be futile, the Court dismisses the claim with prejudice and

14  remands the case to the Los Angeles County Superior Court.  For this reason, the Court

15  does not reach Defendants' remaining arguments as to the FDCPA, nor Defendant's

16  challenges to the state law claims.

17  **A.    Exhaustion**

18  Defendants argue that Plaintiff's claim is barred because she failed to exhaust

19  administrative remedies under 42 U.S.C. § 405(g).  Defendants contend that, though

20  Plaintiff's TAC purports to challenge Defendants' debt collection practices, she is

21  essentially challenging Defendant Memorial's decision to not bill the $7,683 to Medi-Cal,

22  which is "inextricably intertwined" with the Medicare Act.  *See* (Mot. at 10–11).

23  Defendants also argue that "the weight of authority" has applied the exhaustion

24  requirement set forth in the Medicare Act to the Medicaid Act.

25  Plaintiff responds that Defendants misplace their reliance on § 405(g)'s

26  administrative exhaustion requirement because § 405(g) applies only to Medicare, while

27  Plaintiff's claims arise out of Medicaid.  The Court agrees with Plaintiff.

28

Congress created the Medicare and Medicaid programs in 1965. *See* Social Security Amendments of 1965, Pub. L. No. 89-97, §§ 102, 121, 79 Stat. 286, 291, 343. Medicare is a federally-funded health insurance program for the aged and disabled. *See* 42 U.S.C. § 1395c. Medicare incorporates the "claim channeling and jurisdiction-stripping provisions from the Social Security Act," namely 42 U.S.C. § 405(g) and (h). *Avon Nursing & Rehab. v. Becerra*, 995 F.3d 305, 309 (2d Cir. 2021); *see also Kaiser v. Blue Cross of California,* 347 F.3d 1107, 1111 (9th Cir. 2003). Under these provisions, an individual must seek administrative relief as set forth by §§ 405(g) and/or (h) before seeking judicial review in federal court. *See Kaiser,* 347 F.3d at 1111 ("Jurisdiction over cases 'arising under' Medicare exists only under 42 U.S.C. § 405(g), which requires an agency decision in advance of judicial review." (citing 42 U.S.C. § 405(g) ("Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action.")))

. Medicaid, in contrast to Medicare, is a cooperative federal-state medical assistance program run by the participating state for individuals "whose income and resources are insufficient to meet the costs of necessary medical services." *See* 42 U.S.C. § 1396-1; *Harris v. McRae*, 448 U.S. 297, 302 (1980). "Unlike the Medicare Act, the Medicaid Act does not incorporate sections 405(g) or (h)." *Avon Nursing*, 995 F.3d at 309. Medi-Cal, the insurance program raised here, is California's program for Medicaid. *See* (TAC ¶ 23).

There is no textual basis in the Medicaid Act that Plaintiff must exhaust administrative remedies before coming to federal court—even assuming this case is actually a "cleverly concealed" claim for Medicaid benefits. Medicare is a federally-provided insurance program, and thus it is the Medicare statute that sets forth any appeal procedures, including for benefits. *See, e.g.*, *See Kaiser,* 347 F.3d at 1111–12. Because the Medicaid Act is a cooperative program between the federal government and a participating state, it is the participating state that is required to "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for

1  medical assistance under the plan is denied or is not acted upon with reasonable

2  promptness[.]"  42 U.S.C. § 1396a(a)(3).  California, as a participating state, has created

3  an opportunity for a fair hearing before the State, including by providing a judicial review

4  procedure.  *See Norasingh v. Lightbourne*, 229 Cal. App. 4th 740, 752 (2014) ("Judicial

5  review of a denial of Medi-Cal benefits is governed by the administrative mandate process

6  set forth in section 1094.5 of the Code of Civil Procedure.").  In other words, it is the

7  difference in structure between the two Acts that explains the difference in benefit appeals

8  procedures: one program is federal, one is a cooperative federal-state program.  Because

9  the Medicaid Act appears to have, generally, left appeals procedures and judicial reviews

10 thereof to the States, it does not provide for the same exhaustion requirement as the

11 Medicare Act.

12      Although Defendants cite to several cases from the Sixth and Seventh Circuits to

13 argue that a federal exhaustion requirement exists, Defendants' reliance on these

14 authorities is misplaced.  Unlike the circumstances here, these courts applied the § 405(g)

15 exhaustion requirement because the entitlement to Medicaid came from a section of the

16 Medicaid Act that expressly adopted § 405(g), namely, a provision that applied to

17 "intermediate care facilit[ies] for the mentally retarded."  42 U.S.C. § 1396i(b)(2); *see also*

18 *Michigan Ass'n of Homes & Servs. for Aging, Inc. v. Shalala*, 127 F.3d 496, 499 (6th Cir.

19 1997) ("Notably, section 405(g) is incorporated into the Medicaid Act."  (citing 42 U.S.C.

20 § 1396i(b)(2))); *Health Equity Res. Urbana, Inc. v. Sullivan*, 927 F.2d 963, 965 (7th Cir.

21 1991) ("The Medicaid statute provides for judicial review in accordance with the review

22 provision of the Social Security Act." (citing 42 U.S.C. § 1396i(c)(2), now codified at 42

23 U.S.C. § 1396i(b)(2))).  Secondly, Defendants cite to district court cases addressing facts

24 that, on the surface, appear to be similar to those in the present case.  *See, e.g., Binnell v.*

25 *St. Joseph Hosp. Orange*, No. 82000447DOCADSX, 2021 WL 4945189, at *6 (C.D. Cal.

26 Mar. 5, 2021), *report and recommendation adopted*, No. 8:20-00447 DOC (ADS), 2021

27 WL 4945184 (C.D. Cal. Mar. 31, 2021).  A close reading of the facts in each case, however,

28 reveals the plaintiff-patient's entitlement to benefits in each case arose from the Medicare

1   Act, not the Medicaid Act.  For the reasons set forth above, this distinction is material and

2   defeats Defendants' exhaustion argument.   The Court therefore denies Defendants'

3   Motion, insofar as it challenges the Court's subject matter jurisdiction.

4       **B.      Fair Debt Collection Practices Act**

5   The FDCPA was passed by Congress to protect consumers from "abusive, deceptive,

6   and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).  To

7   state a claim under the FDCPA, the plaintiff must prove: "(1) she is a consumer, (2) the

8   defendant is a debt collector, (3) the defendant's challenged practice involves an attempt

9   to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision

10  of the FDCPA in attempting to collect the debt." *Duell Fam. Tr. v. Ford*, No. 24-CV-316

11  JLS (VET), 2024 WL 1318878, at *7 (S.D. Cal. Mar. 27, 2024) (citations omitted); *see*

12  *also Robinson v. Managed Accts. Receivables Corp.*, 654 F. Supp. 2d 1051, 1057 (C.D.

13  Cal. 2009); *Dicion v. Mann Mortgage, LLC.*, 718 Fed. App'x 476, 479 (9th Cir. 2017) ("To

14  be liable for a violation of the FDCPA, a defendant must be a 'debt collector' within the

15  meaning of the statute." (citing 15 U.S.C. § 1692a(6))).

16  Defendants challenge the TAC on nearly every element, arguing that the assertion

17  of the Hospital Lien is not conduct prohibited by the FDCPA, Defendant Y&G is not a

18  "debt collector" as defined by FDCPA, and the Lien Letter does not qualify as a

19  "communication" under the FDCPA.  Because the Court finds that Defendant Y&G is not

20  a debt collector for purposes of the FDCPA, it does not reach the remaining arguments.

21              1.       Whether Defendant Y&G is a Debt Collector under the FDCPA

22  This Court previously held Plaintiff did not demonstrate that the SAC sufficiently

23  alleged that Defendants were "debt collectors" under the FDCPA and Rosenthal Act. *See*

24  (MTD Order at 18).   In this Motion, Defendants argue that the TAC has not cured this

25  deficiency.  Defendants contend that Defendant Y&G falls under a definitional exception

26  in § 1692a(6)(F)(iii), which provides that an entity is not a "debt collector" under the

27  FDCPA if the debt sought "concerns a debt which was not in default at the time it was

28  obtained by such person."  Specifically, according to Defendants, the TAC fails to allege

that the debt was in default when acquired by Defendant Y&G and instead acknowledges that Defendants never billed Plaintiff for any charges.  *See* (Mot. at 16–17 (citing TAC ¶ 30)).  Plaintiff does not address whether the debt was in default when Defendant Y&G acquired it, and instead argues that the TAC's new allegations regarding Defendant's services are sufficient to allege that Defendant Y&G is a "debt collector."  *See* (TAC ¶ 18).

Under the FDCPA, the term "debt collector" specifically exempts "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F)(iii); *see also See Wolfson v. Bank of Am.*, N.A., No. 20-35792, 2021 WL 6101355, at *1 (9th Cir. Dec. 21, 2021) ("The district court properly dismissed [the] FDCPA claims because [the plaintiff] failed to allege facts sufficient to show that [the defendant] is considered a debt collector under the FDCPA." (citing 15 U.S.C. § 1692a(6)(F)(iii))).  The Ninth Circuit has held that, "[a]lthough the Act does not define 'in default,' courts interpreting § 1692a(6)(F)(iii) look to any underlying contracts and applicable law governing the debt at issue."  *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1074 (9th Cir. 2011).  The Court is not aware of any California authority specifically defining when a party is "in default" under the HLA, nor have the parties provided any authority.  The California Supreme Court has, however, concluded that "liens under the HLA require[] the existence of an underlying debt owed by the patient to the hospital."  *See Parnell v. Adventist Health Sys./West*, 35 Cal. 4th 595, 605 (2005).

It does not necessarily follow, however, that all debts pursued by an HLA lien are in default.  In *De Dios*, the Ninth Circuit distinguished the circumstances between only owing on a debt and being in default, finding that a person is exempt from the FDCPA's definition of debt collector if the person obtained the right to the debt before such debt was in default. *De Dios*, 641 F.3d at 1076.  In one district court case, referred to favorably in *De* Dios, the court noted that Congress found meaningful the distinction between collecting on an amount due, versus collecting a defaulted debt:

1  The legislative history of the FDCPA confirms that Congress did not intend
2  the Act to cover companies in the business of regularly servicing outstanding
3  debts, such as rents, for others. The Congressional Report on the Act
4  explained that the definition of a debt collector does not include "mortgage
5  service companies and others who service outstanding debts for others, so
6  long as the debts were not in default when taken for servicing.
7  *Franceschi v. Mautner-Glick Corp*., 22 F. Supp. 2d 250, 254 (S.D.N.Y. 1998) (quoting S.
8  Rep. No. 95–382 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1698). Accordingly, the
9  Court considers whether the debt, when acquired by Defendant Y&G, was in default or
10 whether it was merely outstanding.
11      Here, the TAC does not allege that the unpaid $7,683 was in default when Defendant
12 Y&G acquired it and, instead, is silent on the issue. In particular, the TAC does not allege
13 when Defendant Y&G obtained the debt, though it appears Defendant Y&G obtained the
14 right to collect the debt as early as July 24, 2020, when Defendant Y&G mailed the Lien
15 Letter to Alliance (the tortfeasor's insurance) asserting its "right to enforce a hospital lien
16 related to Plaintiff's covered medical treatment based on the non-submitted and unpaid
17 amount of $7,683.00." (TAC ¶ 30). The TAC also does not allege when, or if, the debt
18 went into default. Regarding facts pertinent to the issue of default, all that is alleged in the
19 TAC is that Plaintiff was treated for medical services on June 5, 2020, Defendant Y&G
20 asserted a right to collect on any settlement between Plaintiff and the tortfeasor on July 24,
21 2020, and that settlement was not reached until March 5, 2021. (*Id.* ¶¶ 25–30); *see*
22 *generally Brown v. Knoxville HMA Holdings, LLC*, 447 F. Supp. 3d 639, 652–53 (M.D.
23 Tenn. 2020) (holding § 1692a(6)(F)(iii) exception applied and noting that, although it was
24 unclear exactly when the servicer became "authorized to undertake collection activity on
25 the debt," "it would have been at the time [the hospital] allegedly 'instruct[ed] [the servicer]
26 to file the hospital lien," at the latest. (citation omitted)).
27      Further and relatedly, there are no allegations that Plaintiff was ever charged for
28 medical services generally or that the $7,683 at issue was ever charged to Plaintiff. *See*

1   (*id.* ¶¶ 25–27).  At most, the TAC alleges that the $7,683 "purportedly remains unpaid."

2   (*Id.*).  Plaintiff has therefore not sufficiently alleged that Defendants are "debt collectors"

3   under the FDCPA because, as alleged, Defendants appear to fall within the

4   § 1692a(6)(F)(iii) exception.  *See De Dios,* 641 F.3d at 1076 ("International Realty is

5   exempt from the definition of a 'debt collector' under § 1692a(6)(F)(iii) because it obtained

6   the right to collect De Dios's rent before the debt was contractually overdue and before it

7   triggered applicable contractual conditions or state law governing default."); *Jara v.*

8   *Aurora Loan Servs., LLC*, 633 F. App'x 651 (9th Cir. 2016) (affirming dismissal of the

9   plaintiff's FDCPA claims because defendant was not a "debt collector" under

10  § 1692a(6)(F)(iii) where the defendant "assumed servicing responsibilities to [plaintiff's]

11  loan prior to any default"); *Hernandez v. Wells Fargo Home Mortg., Inc*., 713 F. App'x

12  711, 712 (9th Cir. 2018) (same).

13        Notwithstanding the lack of authority interpreting the § 1692a(6)(F)(iii) exception

14  to California HLA lien servicers, there are several other district courts that have agreed that

15  parties that assert a hospital lien fall within this exception, absent allegations that the entity

16  acquired the debt when it was in default.  Though the state where each district court sits

17  may differ in its structure of the state's statutory liens, each district court's similar analysis

18  of when a medical debt becomes a defaulted debt under the § 1692a(6)(F)(iii) exception is

19  persuasive.  *See Lange v. Pro. Acct. Servs., Inc*., No. 3:19-CV-0150-HRH, 2020 WL

20  1302512, at *5 (D. Alaska Mar. 18, 2020) (§ 1692a(6)(F)(iii) exception applied and

21  rejecting plaintiff's argument that "his debt went into default the moment he left the

22  Hospital, b[ecause] such an argument makes no sense in light of the evidence that plaintiff

23  had insurance, the tortfeasor had insurance, and the Hospital never billed him for any of

24  the charges he incurred for treatment"); *Ruiz de Balderas v. ETX Successor Athens*, No.

25  6:19-CV-58-JDK-KNM, 2020 WL 1479583, at *6–7 (E.D. Tex. Mar. 4, 2020) (exempting

26  the collecting entity from the FCDPA when the plaintiff "d[id] not allege that any patient

27  was in default when liens were filed"), *report and recommendation adopted*, No. 6:19-CV-

28  58-JDK-KNM, 2020 WL 1478563 (E.D. Tex. Mar. 26, 2020); *Brown*, 447 F. Supp. 3d at

652–53 (§ 1692a(6)(F)(iii) exception applied to a collecting entity because "[c]onspicuously absent is any allegation of [the] [plaintiffs being in default at any time, let alone in default at the time [the servicer] 'obtained' the debt); *Church v. Accretive Health, Inc.*, No. CV 14-0057-WS-B, 2015 WL 7572338, at *9 (S.D. Ala. Nov. 24, 2015) (finding § 1692a(6)(F)(iii) applied at summary judgment because there was no evidence that the hospital had ever sent the plaintiff-patient a bill "or otherwise contacted her to request or demand that she pay that debt"), *aff'd*, 654 F. App'x 990 (11th Cir. 2016); *Hamilton v. Avectus Health Care Sols., LLC*, No. 5:13-CV-01967-SGC, 2015 WL 5693610, at *8 (N.D. Ala. Sept. 29, 2015) ( exception applied when there was "nothing in the record to suggest [defendant] [h]ospital sent a bill to [the plaintiff] prior to" the date the collector acquired the debt, "much less that any payment was due to the hospital before those dates"). Thus, because Plaintiff has failed to allege that Defendants Y&G are "debt collectors" within the meaning of the statute, the Court grants Defendants' motion to dismiss the FDCPA cause of action.

## C.   Leave to Amend

Leave to amend should generally be "freely given when justice so requires." Fed. R. Civ. P. 15(a). However, district courts have discretion to deny leave to amend when amendment would be futile. *Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 725–26 (9th Cir. 2000). A "district court's discretion in denying amendment is particularly broad when it has previously given leave to amend." *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1116 (9th Cir. 2014) (internal quotation marks and citation omitted). *See also Nat'l Funding, Inc. v. Commercial Credit Counseling Servs.*, 817 Fed. App'x 380, 385 (upholding dismissal without leave to amend where the amended "complaint failed to cure the deficiencies explicitly identified by the district court in its prior order"); *Motodani v. MoneyGram Payment Sys., Inc.*, No. 2:22-cv-00664-FWS-MRW, 2022 WL 17254355, at *3 (C.D. Cal. Oct. 24, 2022) (denying leave to amend where "Plaintiff has had two previous opportunities to amend the Complaint in this action, but its amended iterations have not

1   remedied the repeated deficiencies in the then-operative versions described by the court's

2   previous two orders").

3        On this record, amendment to the FDCPA cause of action appears futile because,

4   after several amendments to the complaint and opportunities to cure the pleading

5   deficiencies in Plaintiff's FDCPA claim, Plaintiff has not set forth any allegations that the

6   relevant debt was in default or other facts to demonstrate Defendant Y&G is a "debt

7   collector," even after the Court's previous order highlighted the deficiencies of Plaintiff's

8   FDCPA claim.  Plaintiff also fails to dispute or address this argument in her opposition,

9   which indicates to the Court that she cannot cure the deficiency.  Therefore, dismissal of

10  the FCDPA claim is with prejudice.

11       **D.    Supplemental Jurisdiction**

12       A district court may decline to exercise supplemental jurisdiction over state law

13  claims where the court has dismissed all claims over which it has original jurisdiction.  28

14  U.S.C. § 1367(c)(3); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726

15  (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be

16  dismissed as well.").  Here, because the Court finds dismissal of Plaintiff's federal claims

17  appropriate, the Court declines to exercise supplemental jurisdiction over or address the

18  adequacy of Plaintiff's state law claims.  Therefore, the Court remands this case to the state

19  court in which this action originated.[3]

20

21

22

---

23  [3] The remaining issues in the case deal extensively with California statutory law, including
24  the provision of California's Medicaid services and the propriety of California's hospital
    lien act, as applied to a Medicaid beneficiary.  *See Danner v. Himmelfarb*, 858 F.2d 515,
25  524 (9th Cir. 1988) ("[The] principles of comity will be well-served by allowing the state
26  courts to resolve claims solely of state law."); *see also Mercy Hosp. & Med. Ctr. v. Farmers
    Ins. Grp. of Companies*, 15 Cal. 4th 213, 222–23 (1997) (noting that the HLA lien is "a
27  statutory, not a common law, lien. . . .  [and] [t]he Legislature is, of course, free to define
28  and limit such a lien, and has done so in this case").

**IV.   CONCLUSION**

For the foregoing reasons, the Court **DISMISSES** Plaintiff's first cause of action against Defendant Y&G under the FDCPA with prejudice.  The Court further directs the clerk to remand Plaintiff's remaining state law claims in this action to the Los Angeles County Superior Court and close the case.

**IT IS SO ORDERED.**

DATED:  May 8, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE